IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ramonito Dionisio                      Case No. 3:21 CV 2339
*on behalf of*
*Benjamin Jose Dionisio*,             MEMORANDUM OPINION

           Plaintiff,                JUDGE JACK ZOUHARY

       -vs-

Home-Owners Insurance Company
*dba Auto-Owners Insurance*,

           Defendant.

## INTRODUCTION

This insurance-coverage dispute has a long history with several courts, initiated by a 2019 motor vehicle accident in Canada. This case was filed in Ohio state court in 2021, then removed to this Court (Doc. 1). Simultaneously, a wrongful-death case was pending with our northern neighbour. This Court stayed, and later dismissed without prejudice, this case pending resolution of the Canadian case. That case took longer than expected, finally concluding in 2025 (Doc. 28). This case was then reopened; counsel filed joint stipulations of fact (Doc. 29) followed by briefing (Docs. 31–34). The single issue before this Court is whether Defendant's insurance policy provides underinsured-motorist coverage for Plaintiff's wrongful-death claim.

## BACKGROUND

In October 2019, Benjamin Dionisio was fatally injured in a motor vehicle accident while driving through Canada (Doc. 29 at 1). His vehicle was struck from behind by a semi-tractor driven by a Stargate Logistics employee (*id.* at 2). Benjamin was insured under a policy through Defendant

Home-Owners ("the Policy") (*id.* at 2; Doc. 29-1 at 8). The Policy included uninsured and underinsured coverage with a limit of $1 million (Doc. 29 at 2). The Stargate Logistics employee was at-fault and had insurance with a limit of $2 million Canadian (equaling $1,398,748 US) (*id.*).

The Canadian lawsuit was settled for $450,000 Canadian ($314,718 US) (*id.*). Defendant then paid $4,490 US in death benefits to Benjamin's family (*id.* at 3). Benjamin's father, Ramonito Dionisio, the Administrator of his son's Estate, brought this case, claiming the at-fault driver was an underinsured motorist under the Policy entitling the Estate to additional benefits. Defendant disagrees, arguing Plaintiff is not entitled to additional benefits because the at-fault driver does not qualify as either an uninsured or underinsured driver under the Policy.

Plaintiff advances the "amount received rule" as the proper guide to determine coverage. Because the settlement under the at-fault driver policy was $314,718, Plaintiff argues he is entitled to the difference of $685,282 from the million dollar underinsured motorist coverage of the Policy (Doc. 31 at 3–5). Plaintiff further argues the Policy includes contradictory terms that create ambiguity (*id.* at 6–7). Defendant challenges both positions.

## Law

There is no dispute that Ohio substantive law applies (Doc. 29 at 3). The basis for jurisdiction is diversity, and a federal court sitting in diversity must apply the substantive law of the state in which it sits. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020).

Ohio law recognizes insurance policies as contracts. *Rable v. Sompo Am. Ins. Co.*, 756 F. Supp. 3d 495, 498 (N.D. Ohio 2024) (quoting *Acuity v. Masters Pharm., Inc.*, 169 Ohio St. 3d 387, 391 (Ohio 2022)). The terms of an insurance policy will be given "their plain and ordinary meaning." *Id.* If terms of a policy are clear and unambiguous, courts apply them as written. *Id.*

Generally, underinsured-motorist coverage protects an insured if an at-fault driver has insurance that does not fully compensate for an insured's damages. "[T]he original purpose of underinsured motorist coverage was to ensure that persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist." *Littrell v. Wigglesworth*, 91 Ohio St. 3d 425, 430 (Ohio 2001). Ohio Revised Code § 3937.18(C) defines the scope of underinsured motorist coverage:

> Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
>
> For purposes of underinsured motorist coverage, an "underinsured motorist" does not include the owner or operator of a motor vehicle that has applicable liability coverage in the policy under which the underinsured motorist coverage is provided.

The parties disagree on the application of the terms of the Policy to the Canadian settlement, presenting this Court with a purely legal question.

## DISCUSSION

### *Was the At-fault Driver Underinsured?*

Plaintiff's argument presupposes the "amount received rule" dictates the at-fault driver is underinsured, citing *Clark v. Scarpelli*, 91 Ohio St. 3d 271 (Ohio 2001). But *Clark* was clear -- "underinsured motorist coverage . . . [is] not intended to be 'excess insurance' to the tortfeasor's applicable automobile liability insurance." *Id.* at 276. The Ohio Supreme Court construed the "amounts available for payment" language of the underinsured statute to require a comparison between the amounts accessible to the injured claimant between the tortfeasor's policy and the injured claimant's own underinsured coverage. *Id.*

3

Plaintiff also argues *Littrell v. Wigglesworth*, 91 Ohio St. 3d 425 (Ohio 2001) and *Webb v. McCarty*, 114 Ohio St. 3d 292 (Ohio 2007) support the proposition that the "amount received rule" renders the at-fault driver underinsured.  Not so.

*Littrell* involved a head-on collision where a car owned and operated by Jeffrey Wigglesworth veered left of center and collided with a car driven by John Littrell but owned by Stella Pratt.  91 Ohio St. 3d at 426.  The car Littrell drove -- referred to as the "Pratt vehicle" -- carried four other individuals. The surviving occupants and decedent administrators of the Pratt vehicle brought personal-injury and wrongful-death claims against Wigglesworth, seeking underinsured coverage benefits from their respective insurance providers.  The trial court granted summary judgment for the defendant insurance companies.  The question there was "Whether R.C. 3937.18[(A)(2)] preclude[d] recovery merely because the insured's underinsured motorist coverage limits are identical to or less than the tortfeasor's liability limits when, due to the presence of *multiple* claimants, the insured is unable to recover the tortfeasor's limits." *Id*. at 429 (emphasis added).

To start, *Littrell* interpreted an outdated version of Ohio's underinsured statute.  Moreover, *Littrell* interprets the "amount received rule" specifically within the context of *multiple claimants* against a single tortfeasor.  Wigglesworth had a $1.3 million liability insurance policy.  The full $1.3 million policy was paid out, in varying amounts, to the five occupants of the Pratt vehicle.  *Id.* at 431.

Next, *Webb* simply reinforced the holding of *Littrell*.  "[I]n a case involving multiple claimants, [underinsured motorist] coverage would be compared to the amount paid under an automobile liability policy, not to the limit of the automobile liability policy." *Webb*, 114 Ohio St. 3d at 292–93 (citing *Littrell*, 91 Ohio St. 3d at 428–35).  *Clark*, *Littrell*, and *Webb* remain good law

4

for a scenario not before this Court. Here, there is a singular claimant who was paid well under the at-fault driver policy.

Plaintiff, perhaps aware of this problem, attempts to create multiple claimants (Doc. 34 at 2–3). The Policy states that any claims arising out of the bodily injury of the decedent are consolidated into one single claim (Docs. 29-1 at 35; 33 at 4). "In *Littrell*, as in *Clark*, the pot of available funds was diminished because the same pot [was] used to pay off other claimants." *Gilliland v. Nationwide Prop. & Cas. Ins. Co.*, 188 Ohio App. 3d 621, 626 (Ohio Ct. App. 2010). Here, there is no divisible policy or multiple claimants to consider.

The Policy is only triggered if the amount available under the at-fault driver's liability policy is *less* than the limit stated in the Policy's underinsured motorist coverage (*See* Doc. 29-1 at 34; Doc. 32 at 10; O.R.C § 3937.18). Underinsured coverage is not triggered here because the at-fault driver policy limit of $2 million (Canadian) exceeds the Policy limits of $1 million (US) -- regardless of conversion rates. *See Rable v. Sompo Am. Ins. Co.*, 756 F. Supp. 3d 495, 499–500 (N.D. Ohio 2024); *Hemmelgarn v. Banner*, 2022 WL 899770, at *2 (S.D. Ohio 2022). The at-fault driver cannot be considered underinsured.

### *Is There Ambiguity?*

There is also no ambiguity in the Policy which plainly states (Doc. 29-1 at 36):

> The amount **we** pay will be reduced by any amounts *paid* or *payable* for the same **bodily injury:**
>     (1) under **SECTION II – LIABILITY COVERAGE** of the policy;
>     (2) by or on behalf of any person or organization who may be legally responsible for the **bodily injury;** or
>     (3) under any Automobile Medical Payments Coverage, if provided by the policy.

Plaintiff argues that including both "paid" and "payable" creates ambiguity (Doc. 31 at 6). But there is none. Plaintiff uses the Merriam Webster definitions of these two words to draw a strict

distinction, claiming the terms are contradictory (*id.* at 7). That's incorrect. Instead, the terms used in context here simply represent different segments of a timeline -- what has been paid or what will be paid. This is consistent with the Ohio statute -- no ambiguity.

## CONCLUSION

Sometimes insurance coverage is complicated. Not this case. By the unambiguous terms of the Policy, the at-fault driver does not qualify as an underinsured driver. Plaintiff, as the sole claimant, is not entitled to recover from Defendant's Policy.

IT IS SO ORDERED.

                                       s/ *Jack Zouhary*
                                       JACK ZOUHARY
                                       U. S. DISTRICT JUDGE

August 28, 2025